Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 2383 | DATE | 10/4/2002 |
| CASE TITLE | UNITED STATES ex rel Ghazi Abdallah vs. William Boyd | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The amended petition for writ of habeas corpus is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | OCT 0 8 2002 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 41 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| EF | courtroom deputy's initials | 02 OCT -7 PM 12:42 date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED OCT 0 8 2002

| UNITED STATES of AMERICA, ex rel. | ) | |
|---|---|---|
| GHAZI ABDALLAH, | ) | |
| | ) | |
| Petitioner, | ) | No. 99 C 2383 |
| | ) | HONORABLE CHARLES R. NORGLE |
| vs. | ) | |
| | ) | |
| WILLIAM BOYD, | ) | |
| | ) | |
| Respondent. | ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge:

Before the court is Ghazi Abdallah's amended petition for writ of habeas corpus under 28 U.S.C. § 2254. For the following reasons, the petition is denied.

**I. BACKGROUND**

Following a jury trial in the Circuit Court of Cook County, Ghazi Abdallah was convicted of murder and sentenced to 36 years imprisonment. The court takes the background facts from the Illinois Appellate Court's opinion on direct appeal, which are presumed correct. 28 U.S.C. § 2254(e)(1).

The victim, Lela Jackson, worked in an auto body shop owned by Abdallah and was romantically involved with Abdallah. At approximately 12:30 a.m. on June 11, 1990, fire department paramedics responded to an emergency call, and found Jackson lying inside a car in Abdallah's shop. Abdallah told the paramedics that Jackson had passed out. The paramedics unsuccessfully attempted to revive Jackson, and asked Abdallah why Jackson was unconscious. Abdallah said that a man with a gun had come into the body shop and tried to rob him and Jackson.

A paramedic asked if Jackson had been shot, and Abdallah said Jackson had not, but that she had passed out after the would be robber fired a shot at the floor. When the paramedics loaded Jackson into an ambulance, they discovered a gunshot wound in her chest, from which she later died.

During the investigation, the police discovered in Jackson's purse a note that she had written about Abdallah. The note expressed Jackson's fear of Abdallah, and also expressed her intent to be with him. Abdallah made several statements to investigators and paramedics, all of which centered on the theme that a man with a gun had entered the shop, tried to commit a robbery, and fired a shot. In one of Abdallah's statements, he said that the purported shooter pushed Jackson to the floor and then fired a shot. In another version, the purported shooter held a gun to Jackson's head, and then fired a shot as he ran out the door. In still another version, the purported shooter entered the store, shot Jackson, and then fled.[1] In all of Abdallah's versions of the events, he said that he grabbed a stick and chased the purported shooter out of the body shop and across an adjacent vacant lot.

Prior to trial, the state indicated its intent to introduce into evidence the note found in Jackson' purse. Abdallah objected, and the trial court stated that if a proper evidentiary foundation was laid for the note, it would admit the portion of the note indicating Jackson's intent to be with Abdallah, but that the portion of the note expressing fear of Abdallah would not be admitted. The state and its witnesses made three passing references to the note during the course of the trial. Later, outside the presence of the jury, the trial judge heard lengthy argument from the state and defense counsel, and ruled that no portion of the note would be admitted into evidence.

---

[1] In his *pro se* habeas petition, Abdallah attempted to raise the inference that Jackson was working together with the purported shooter in what Abdallah describes as "(a joke or set up to get money from me.)" (Pet. pg. 6.) Abdallah also expanded his story to include an allegation that the alleged shooter first shot Jackson, and then pointed the gun at Abdallah and pulled the trigger, resulting in a misfire that emboldened Abdallah to pursue the shooter. (See id.)

Several witnesses testified at trial, including two witnesses that heard one or two shots coming from the body shop, and then looked to see what was happening. One witness said that he looked at the body shop approximately five seconds after hearing the gunfire, and that approximately ten seconds after the shots were fired, he saw Abdallah run out of the shop. This witness did not see anyone else come out of the shop, nor did he see if Abdallah was carrying anything in his hands.

The other eyewitness testified that he heard the shots and several minutes later saw an ambulance arrive. This witness did not have a view of the shop, but had an unobstructed view of the vacant lot over which Abdallah claimed to have chased the purported shooter. This witness testified that he did not see Abdallah run across the lot.

Also testifying were investigating police officers and an assistant state's attorney, who testified, *inter alia*, about Abdallah's "other shooter" story. These persons testified that they asked Abdallah to review photographs in an attempt to identify the purported shooter. Abdallah identified three different individuals from photographs as being the purported shooter. The prosecution also presented witnesses, including Jackson's sister, that had knowledge of the relationship between Abdallah and Jackson. These witnesses said they overheard Abdallah threaten to kill Jackson. Abdallah did not testify. After hearing all of the evidence, the jury found Abdallah guilty of murdering Jackson.

On direct appeal, Abdallah argued that the evidence against him was insufficient to support his conviction, and that the three references to Jackson's note were reversible error. The Illinois Appellate Court rejected Abdallah's arguments, and affirmed the conviction in all respects.

Thereafter, Abdallah filed a post-conviction petition pursuant to Illinois law. In that petition, Abdallah raised numerous issues, including ineffective assistance of counsel, the use of purportedly

perjurious and false testimony, erroneous evidentiary rulings, and insufficient evidence to convict. The court rejected Abdallah's arguments and denied post-conviction relief. Abdallah appealed, and received appointed counsel for the appeal. Counsel later filed a motion to withdraw pursuant to Pennsylvania v. Finley, 481 U.S. 551 (1987). The Illinois Appellate Court granted the Finley motion, writing that it had reviewed the record and found no issues of arguable merit.

Abdallah then filed a *pro se* habeas petition in this court raising numerous issues of ineffective assistance of counsel, insufficient evidence, purportedly erroneous evidentiary rulings, and sentencing issues. After reviewing the pleadings, the court appointed counsel to represent Abdallah. Appointed counsel represented to the court that he could find no meritorious issues, and asked to withdraw. Abdallah then retained private counsel, who has filed an amended habeas petition raising three general issues: (1) the evidence was insufficient to convict; (2) the references to the victim's note rendered the jury irrational; and (3) claims of ineffective assistance of counsel.

## II. DISCUSSION

The court first discusses the general rules of federal habeas review, including procedural default, and then discusses each of Abdallah's claims.

### A. Standard of review:

Abdallah's case is governed by 28 U.S.C. § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act ("AEDPA"). Section 2254 sets a high hurdle for habeas relief. The statute states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court recently examined § 2254(d)(1), and held that the "contrary to" clause and the "unreasonable application" clause encompass two types of error that will cause a writ to issue. See Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 1516-23 (2000) (opinion of O'Connor, J.). The "contrary to" clause describes a state court decision that is opposite to the law announced by the Supreme Court, or where the state court "confronts facts that are materially indistinguishable from . . . relevant Supreme Court precedent," and reaches a conclusion opposite to that of the Supreme Court. See id. at 1519 (also describing "contrary to" as "diametrically different," "opposite in character or nature," or "mutually opposed"); see also Boss v. Pierce, 263 F.3d 734, 739 (7th Cir. 2001) (discussing Williams).

The "unreasonable application" clause of § 2254(d)(1) governs alleged errors in the state court's application of Supreme Court precedent to the facts of the case. See Boss, 263 F.3d at 739; see also Williams, 120 S. Ct. at 1520-21 (discussing different scenarios of unreasonable application of facts, but ruling that "[f]or now it is sufficient to hold that when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case, a federal court applying § 2254(d)(1) may conclude that the state-court decision falls within that provision's 'unreasonable application' clause."). While federal courts have an independent duty to say what the law is, Williams, 120 S. Ct. at 1522, an erroneous application of the law by a state court will not be grounds

for relief unless the error was also unreasonable. See id.; Boss, 263 F.3d at 739. Whether the state court's decision was reasonable is an objective question that does not necessarily turn on the correctness of the state court's decision. See Williams, 120 S. Ct. at 1521-22 (holding that a federal habeas court should not issue a writ simply because it concludes that the state court erroneously applied federal law, rather, the application must also be unreasonable); cf. Schaff v. Snyder 190 F.3d 513, 523 (7th Cir. 1999) (holding that a federal habeas court should uphold a state court ruling that is minimally consistent with the facts and circumstances of the case). It is only when the application is unreasonably erroneous that habeas relief may be granted. See Williams, 120 S. Ct. at 1520-22; Washington v. Smith, 219 F.3d 620, 628 & n.5 (7th Cir. 2000).

Section 2254(d)(2) involves the state court's determination of the facts, which are presumed correct. See 28 U.S.C. 2254(e)(1); see also Rodriguez v. Peters, 63 F.3d 546, 554 (7th Cir.1995) ("Factual findings that have been decided by the state trial or appellate courts are presumptively correct."). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B.  Procedural default:**

Section 2254 requires a habeas petitioner to exhaust all remedies available in state court prior to pursuing federal habeas relief. See 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 842-43 (1999); see also Spreitzer v. Schomig, 219 F.3d 639, 644-45 (7th Cir. 2000) (discussing exhaustion of habeas claims). In addition to exhausting the remedies available in state court, a habeas petitioner is procedurally barred from raising claims in a federal habeas petition that were not raised in the state court proceedings. See O'Sullivan, 526 U.S. at 848 (holding that a petitioner's failure to present three claims to the Illinois Supreme Court for discretionary review resulted in a

6

procedural default of those claims). Fair presentment of a constitutional claim requires a habeas petitioner to present both the operative facts and the controlling legal principles to the state court before bringing the claim in a federal habeas petition. Cf. Rodriguez v. Scillia, 193 F.3d 913, 916 (7th Cir.1999) (discussing exhaustion of claims) (citing Picard v. Connor, 404 U.S. 270, 277 (1971)). Thus, a habeas petitioner procedurally defaults, or waives, any claim raised for the first time in federal court. Federal courts may review defaulted claims only if: (1) the petitioner shows cause for failure to raise the claim, and actual prejudice resulting therefrom; or (2) refusal to consider the defaulted claim would result in a fundamental miscarriage of justice, where a constitutional violation has resulted in the conviction of one who is actually innocent. See Edwards v. Carpenter, 529 U.S. 446, 120 S. Ct. 1587, 1591 (2000); Spreitzer, 219 F.3d at 647-48; Rodriguez, 193 F.3d at 917 (citing cases). With these principles in mind, the court examines Abdallah's petition.

## C. Abdallah's petition:

### 1. Insufficient evidence:

Abdallah claims that the evidence was insufficient to support his conviction. The Illinois Appellate Court addressed this claim on direct appeal, and examined whether on the evidence, when viewed in the light most favorable to the prosecution, any rational trier of fact could have found that the elements of the offense had been proven beyond a reasonable doubt. Under Supreme Court precedent, this is the correct standard by which to analyze a claim of insufficient evidence to convict. See Wright v. West, 112 S. Ct. 2482, 2485-86 (1992); United States v. Jackson, 300 F.3d 740, 747 (7th Cir. 2002). Thus, the issue is whether the Illinois Appellate Court unreasonably applied this standard to the facts of Abdallah's case. It did not.

The Illinois Appellate Court examined the record, and summarized the evidence against Abdallah. The Court noted that the jury heard the testimony of the witnesses, including Abdallah's statements that he had chased the purported shooter from the body shop. Abdallah's "other shooter" story was refuted by the two witnesses that did not see Abdallah chase anybody. In short, the jury rejected Abdallah's version that Jackson was murdered by an unknown armed robber. Taking all the evidence in the light most favorable to the state, the Illinois Appellate Court concluded that there was sufficient evidence for a reasonable trier of fact to find that the elements of the offense had been proven beyond a reasonable doubt. There was nothing unreasonable about the Illinois Appellate Court's treatment of the issue. The Court analyzed the full record, applied the correct constitutional standard, and found that a rational jury could have convicted on the evidence.

Abdallah now points to the following facts, claiming that they undermine the state's case: (1) the body shop was in a high crime area; (2); Abdallah called 911 to report the incident; (3) the paramedics did not initially see blood on Jackson's body; (4) Abdallah was calm and cooperative when the police arrived to investigate; (5) Abdallah told police that he chased the purported shooter; (6) the police searched the premises for approximately thirty minutes, without the benefit of sunlight, and did not find the stick that Abdallah claimed to have used when he chased the purported shooter; (7) gunpowder tests on Abdallah's hands were inconclusive; (8) an unnamed witness saw Abdallah running from the shop, but could not determine whether Abdallah was chasing anyone or had a stick; (9) another unnamed witness could not verify whether Abdallah was chasing a robber from the shop; and (10) there was no physical evidence linking Abdallah to the crime.

These facts fall far short of demonstrating that no rational jury could have convicted Abdallah. Indeed, several of the facts are consistent with the state's theory that there was no

attempted armed robber, and that Abdallah was the shooter. It is the jury's duty to hear the evidence and decide as a factual matter whether the prosecution has proved beyond a reasonable doubt that an accused is guilty of the charged crime. See e.g. United States v. Paneras, 222 F.3d 406, 410 (7th Cir. 2000). That some of the evidence against Abdallah was circumstantial does not make the jury's verdict irrational. See e.g. United States v. Brown, 31 F.3d 484, 488 (7th Cir. 1994). In this case, the Illinois Appellate Court reasonably concluded that there was sufficient evidence for a rational jury to convict Abdallah. This claim is denied on its merits.

As an aside, Abdallah also claims that his sentence was excessive because his conviction was based on insufficient evidence. This claim is without merit because Abdallah's conviction is valid and a sentence of 36 years for murder is not unconstitutionally excessive. U.S. Const. amend. VIII; see also Koo v. McBride, 124 F.3d 869, 875 (7th Cir. 1997) (citing cases and noting that a federal habeas court generally does not review a sentence that falls within the state's statutory limit unless it is grossly disproportionate to the crime); Holman v. Page, 95 F.3d 481, 485-86 (7th Cir. 1996) (analyzing a habeas claim of disparate sentencing and noting that Illinois has a high interest in punishing perpetrators of brutal crimes). This claim is also denied on its merits.

2.  **Evidentiary rulings:**

Next, Abdallah asserts that the prosecution's three references to the note found in Jackson's purse deprived him of a fair trial. The three references were: (1) the state's opening statement, where the prosecutor mentioned that the jury would "hear evidence that a note was later found in [the victim's] purse and . . . may receive evidence concerning what she was going through during that time;" (2) testimony from Jackson's sister, who identified the note as having been written by Jackson; and (3) testimony from the detective that found the note in Jackson's purse and then asked

9

Abdallah about the relationship between Abdallah and Jackson. The Illinois Appellate Court reviewed these three references and concluded that the jury was not made aware of the content of the note, nor could the three references to the note have led the jury to deduce the content of the note. In the context of the entire trial, the Illinois Appellate Court ruled that the limited references to the note were inconsequential and harmless beyond a reasonable doubt.

Abdallah asserts that the jury must have been preoccupied with the note because the issue of its admissibility was not resolved until the jury had already heard much of the evidence against him. As a result, Abdallah claims that the jury was incapable of reaching a fair determination of guilt or innocence despite the trial judge's ruling that the note was inadmissible. Abdallah's contention is without merit.

It is well settled that evidentiary issues such as hearsay, lack of foundation, and unfairly prejudicial evidence are generally state law claims that do not qualify for habeas relief. See Dressler v. McCaughtry, 238 F.3d 908, 914 (7th Cir. 2001); Koo, 124 F.3d at 874. There is an exception, however, such as where an erroneous evidentiary ruling may deprive a defendant of his or her right to a fundamentally fair trial. See e.g. Idaho v. Wright, 497 U.S. 805, 110 S. Ct. 3139, 3145-48 (1990); Dressler, 238 F.3d at 914. In this case, Abdallah's claim fails for multiple reasons. First, the note was not admitted into evidence, and any claim that the jury was preoccupied about the note is pure speculation on Abdallah's part. Second, Abdallah fails to demonstrate that the three references to the note violated his constitutional right to a fundamentally fair trial. According to the Illinois Appellate Court, the references to the note were inconsequential and harmless beyond a reasonable doubt. There is nothing in the record to support the conclusion that three minor

references to the note crossed the constitutional threshold necessary to warrant habeas relief. Koo, 124 F.3d at 874-75. This claim is denied on its merits.

### 3. Ineffective assistance of counsel and procedural default:

Abdallah's last argument is a myriad of ineffective assistance of counsel claims. Abdallah's counsel states that the ineffective assistance of counsel claims are procedurally defaulted because they were not presented on direct appeal, but he can demonstrate cause and prejudice. In light of Wilkinson v. Cowan, 231 F.3d 347 (2000) and its progeny, counsel's procedural default conclusion may not be entirely correct, because at least some of the ineffective assistance of counsel claims raised in the habeas petition were also raised during the post-conviction proceedings.[2] See id. at 351-52 (discussing procedural default and the effect of Finley). In any event, all of Abdallah's ineffective assistance of counsel claims are without merit, notwithstanding any possible procedural default. See 28 U.S.C. § 2254(b)(2)

In Abdallah's amended habeas petition, he asserts that counsel was ineffective for: (1) failing to submit a bill of particulars to specify what type of evidence would be presented at trial; (2) not impeaching the victim's lifestyle; (3) failing to use 911 tapes showing that Abdallah called police; (4) failing to object to voir dire concerning extra-marital affairs; (5) allowing questionable jurors to sit on the jury; (6) not permitting Abdallah to testify so as to impeach the state's witnesses; (7) failing to object to the prosecutor stating that each of the three purported shooters Abdallah identified

---

[2]Abdallah's post-conviction petition raised the following issues of ineffective assistance of counsel: (1) failure to interview a witness; (2) failure to subpoena documents; (3) failure to present evidence of Abdallah's 911 phone call to show he called police; (4) failure to remove to jurors from the venire; (5) failure to move to suppress statements; and (6) failure to permit Abdallah to testify.

were black, thereby inciting racial prejudice among the jurors; and (8) appellate counsel's failure to raise ineffective assistance of trial counsel on direct appeal.[3]

Ineffective assistance of counsel claims are governed by the familiar standards of Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). Abdallah must first demonstrate that counsel's performance was deficient, meaning that it fell below objective standards for reasonably effective representation. See id. at 687-88. The court reviews counsel's performance deferentially, particularly counsel's choice of strategies. See Drake v. Clark, 14 F.3d 351, 355-57 (7th Cir. 1994). A habeas petitioner bears a heavy burden in demonstrating that counsel's performance was deficient to the point of offending the constitution. See id.; see also Brown v. Sternes, – F.3d –, No. 01-2326, 2002 WL 2014644, at *12-20 (7th Cir. Sept. 4, 2002) (granting habeas relief due to ineffectiveness assistance of counsel). Abdallah must then show that the deficient performance prejudiced his trial and/or appeal, meaning that but for the deficient representation, there is a reasonable probability that the result of the proceedings would have been different. See Strickland, 466 U.S. at 694. A reasonable probability of a different result will be found if the court's confidence in the outcome is undermined by evidence of deficient attorney performance. See Brown, 2002 WL 2014644, at *12; Morris v. United States, 264 F.3d 726, 727 (7th Cir. 2001).

Here, Abdallah's claims are simply a list of several things that Abdallah now asserts his counsel should have done differently. Generally speaking, such hindsight based attacks on counsel's performance are not grounds for relief under Strickland. See Drake, 14 F.3d at 355-56. All of Abdallah's claims are conclusory, as he offers no supporting facts. There is nothing in the record

---

[3]In his *pro se* petition, Abdallah raised additional assistance of counsel issues that were expressly withdrawn in the amended petition.

from which the court could conclude that the performance of Abdallah's trial or appellate counsel fell below reasonable standards of performance. Moreover, issues of counsel's performance cannot be made out of context. See id. (noting that counsel's effectiveness is judged under the totality of the circumstances) (quoting United States v. Moralez, 964 F.2d 677, 683 (7th Cir. 1992)). Snippets of a case taken from a cold record may appear to be ineffective representation, when the reality of the situation could have been quite different. This is why there is a substantial burden on a petitioner to present evidence demonstrating that counsel's performance fell below reasonable standards. Compare Brown, 2002 WL 2014644, at *8-20 (analyzing extensive evidence gathered post-conviction, which demonstrated deficient performance). Abdallah fails to present any such context for his claims. The amended petition simply lists the multiple things that Abdallah says should have been done differently, but fails to present the context of the claims or demonstrate that counsel's decisions fell outside of what is constitutionally acceptable.

Similarly, Abdallah fails to present any evidence of prejudice. Abdallah complains of counsel's choices, but that is all. Abdallah presents nothing to show a reasonable probability that the outcome of the proceeding could have been different if counsel had taken different tactics. In short, Abdallah's amended petition does not undermine the court's confidence in the outcome of the proceedings.

## III. CONCLUSION

For the foregoing reasons, the court denies Abdallah's amended petition for writ of habeas corpus under 28 U.S.C. § 2254.

IT IS SO ORDERED.

ENTER:

*Charles R. Norgle*

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 10/4/02